Case is Mount Sinai Medical Center of Florida, Inc. v. Solis Health Plans, Inc., 24-13386. I'll give the parties an opportunity to get set up at the tables. Ms. Mansfield, when you are ready, you may begin. Proceed to the podium. Ms. Mansfield, I see that you have reserved five minutes for rebuttal. Thank you, Your Honor. Jennifer Mansfield from Holland & Knight. With me is Christopher Bellows, also from Holland & Knight. May it please the Court. The parties agree, as we pointed out in our reply brief at pages one and two, on a lot of the issues that are pertinent to this case. Amongst those is, most importantly, is the wrong standard of review under the Mount Sinai says that the Court didn't actually apply the standard that it enunciated in its order, which we think this Court should believe what standard was applied by what was in the order, and that it was harmless error, but it wasn't. The federal officer removal statute is a remedy. It's not just procedure. It's a remedy for the federal officers or their agents, which Solis is in this instance, to not have to litigate in state court. Solis has lost that remedy by being remanded to the state court, and so it's not harmless. The federal officer removal statute has four factors that courts look at for removal and remand issues. First, Solis must be a person. That is not disputed in this case. Second, Solis must be acting under a federal office or agency, and Solis must be sued for actions under color of that office, and Solis must have a colorable federal defense. All three of those are under dispute here. The second factor doesn't seem to be much in dispute. In other words, what I understand, and please correct me if I'm misunderstanding, you don't disagree that an MAO is, in certain circumstances, acting under color of an agency. What I think you're arguing is really the third, and then we'll get to the fourth factor, but the third factor seems to be doing most of the work here in that, at least in this instance, it is or is not, that's the dispute between the parties, that it is or is not acting under color with regard to this specific issue. You're arguing that it was acting as a coverage matter for Medicare on Medicare's behalf. They're arguing that, no, this was simply a contractual dispute based on the contract between you all. But there doesn't seem to be dispute on the second element. Am I missing something? My understanding was that Mount Sinai was contesting that. Okay. I think that the case law is very clear when you apply that the Medicare statute specifically created Medicare Advantage plans in order for Medicare to take advantage of the savings that private insurers were bringing and to bring those savings to Medicare. So the Medicare Advantage organizations are acting on behalf. It seems to me that they, that there's, and I'll ask your opposing counsel when he comes up here, but it seems to me that what they're saying is, yeah, there's some cases which say that in certain circumstances that removal would be appropriate. Those being, and by saying that, you'd have to admit that the second prong is met. What they're saying is this is not one of those cases because there's this dispute about whether you are acting under your contract with Medicare or you are acting consistent with your contract with Mount Sinai. Well, I definitely believe the third factor is the most contested factor. So it seems to me that the big dispute, correct me if I'm wrong, is what we can look at. So your opposing counsel says he's the master of the complaint, the four corners don't say anything about coverage, and so this is simply a payment dispute between two people who have a contract with each other, and that is not acting under color of Medicare. You say we can look beyond the four corners at other stuff, and if you look at that other stuff, specifically our notice of removal, it indicates that, in fact, this is a coverage dispute. Have I summarized it fairly correctly? I believe so, Your Honor, and I think the— Why are you right and he's not? Well, the court decided that issue back in 2000 in the Simerinsky case that we cited in our briefs where the court can look at not only the removal materials but also affidavits or declarations filed afterwards because— and I think that's even more so with the federal officer removal statute because it's liberally construed unlike other types of removal. Well, it's certainly true that we can look at other things for the fourth factor for whether there's a federal defense. The question is can we look beyond the four corners for any of the factors and specifically for the third one? That seems to be the dispute here. Well, in a series of cases in the ERISA context, Butero and then Connecticut State Dental and then Ferrero— The problem is those are complete preemption cases, which I think is different than federal officer removal in my view. Well, it is, but they're both— Well, federal officer removal statute is construed liberally in favor of removal. Without a doubt. But complete preemption is something very, very conceptually different. First of all, there's no statute. It's completely made up by the Supreme Court. And secondly, the whole nature of it is we look past what's there to see what the federal cause of action is to see if it's covered by it. That's a very different inquiry than a statutory requirement of the four or three elements that you laid out. What's the best case you have for federal officer removal that for the third factor we can look beyond the four corners of the complaint? Well, for federal officer removal, it's going to be Jefferson City is one of those cases. I mean, in that case, Justice Ginsburg wrote for the court and said that they had to credit the materials submitted by the— The removing party. By the removing party at that time. And then the First Circuit then in the government of Puerto Rico case took that and said, listen, I know that there's a fact dispute about whether or not this is true, but the Supreme Court has said we have to credit the evidence that you've submitted, and so we're going to hold that— What about our case law? Have we ever looked for the third element beyond the four corners of the complaint in a federal officer removal case? I believe in the Tenet case, there were documents submitted. But the Eleventh Circuit hasn't had a case like this where there was a provider agreement? Well, certainly, let me be clear, not in this context. I'm talking about in general, in a federal officer removal case where we've analyzed what we're calling the third element, but what I'll call the causation element. Do we have a case where we've looked beyond the four corners of the complaint? In the federal officer removal, I believe that the Tenet case did that. But outside the federal officer removal, Siermienski, I don't believe, was an ERISA case. And it was directly put before the court whether or not affidavits or declarations filed after even the notice of removal was filed could be considered. What about our Kaver case? Well, the Kaver case— Did we look beyond the four corners of the complaint in making a determination of whether the causal connection had been met? Yes, you did, because the rural electric cooperatives in that case, there were, I think, three different declarations submitted. In addition to the legislative history of the Rural Electric Cooperatives Act. And I think the Kaver case is very analogous to this case, because in that case, the court held that in the absence of the federal rural electric legislation, the rural electric cooperatives wouldn't exist. The same can be said here about the Medicare Advantage organizations. In the absence of the MAO legislation, they wouldn't exist. And the Medicare would just continue under Part A and B as usual and not have this Part C. And so they're acting on behalf of, but it's a legislative history, but it's also all the declarations. So if we do look beyond the four corners of the complaint, what tells us that this is, in fact, a coverage dispute and not a payment dispute? The declaration, the second declaration of Michael Lynch, it's the lower court docket 13-3. He provides a declaration that says that one of the claims was denied in whole for failure to preauthorize. That's a coverage determination. He also said attach four sample EOBs showing zero payments, i.e. denied, and in those cases for duplicate claims. Of course, we have our hands tied behind our back at the time because the plaintiffs purposely did not identify the claims at issue in the complaint. And that's a strategic decision that has developed in the wake of the Connecticut State Dental and Barrera case. What about the notice of removal? Did the notice of removal itself indicate whether this was a coverage dispute as opposed to a payment dispute? There was a first declaration of Michael Lynch that attached two copies of contracts with CMS in addition to stating that coverage is an issue and it was operating in furtherance of its investigation of potential fraud, waste, and abuse. Isn't this Docket Entry 1, page 3, paragraph 6? In denying payment for services based on medical necessity, Solis determined that the services were not covered under the Medicare Act or the enrollee's MAO plan or raised coverage concerns related to Solis' role as a steward of federal funds? That's true. And then when we learned that Mount Sinai was contesting that coverage determinations had been made, that's when we filed the second declaration of Mr. Lynch. I yield to my... And you've reserved five minutes. Yes, Your Honor. Mr. Klimas. Thank you, Your Honors. May it please the Court, Jonathan Segalow on behalf of Mount Sinai Medical Center. Your Honors, I guess I'll pick up where we left off with opposing counsel. Yes, so let me start where I started with your opposing counsel. It seems to me that, and correct me if I'm wrong, I don't want to put words in your mouth, that there isn't a contest on whether an MAO in certain circumstances can be acting on behalf of the agency or under the agency. But the dispute, the hot dispute that you have is in this circumstance, based on the way we alleged it, they are not acting under because this is simply a payment dispute that deals with our contract with them and has nothing to do with Medicare. Is that right? That's exactly right, Your Honor. Okay, so we're really not talking about Element 2. I'm not saying you stipulate, but we're not talking about Element 2. The dispute, the fire in this case, is really on Element 3, right, the causation element. That's correct. And with respect to Element 2, quickly, we're not saying that in every instance. It depends. There are times when a coverage determination is based on an interpretation of the Medicare Act. In that instance, it probably would be a federal claim. There are other times where a coverage determination is based on something else. There might be a plan that… Okay, that's fair. Now, as on the third element, it seems to me that the dispute that you all have, and, again, I'm going the same order that I went with your opposing counsel, is that what do we look at? In other words, your argument is the well-plaid complaint rule applies on Element 3. The four corners of the complaint are clear. We've alleged a payment dispute and not a coverage dispute. They come back, and they can't really dispute that. What they say is, no, we're allowed. There's an exception to the well-plaid complaint rule, at least with regard to this element, and we're allowed to look beyond that. Is that a fair description of where you all are at? I agree. I think that's correct. Okay. Tell me why you're right and why your opposing counsel is not. Sure. So I wouldn't even frame it as an issue of just mindlessly applying the well-plaid complaint rule. And I know you said that you believe the complete preemption cases are a little bit different, but I do think those cases at least, and they are different in the sense that there's not a statute, like you said, but I think in this  And it's a different theory and requires — doesn't have, like, defenses to how you undo them, doesn't have some element that the well-plaid complaint rule applies, but some elements where it doesn't. It seems to be very different. It's different, but I think those cases are instructive in this context because what the complete preemption doctrine says, what the artful pleading doctrine more broadly says, is that there are times when — is that you don't base a decision on removal on the label that is applied to the claim. You look at the substance of the claim, and if the claim substantively is a claim that is federal in nature and can be removed, it's removable even if the plaintiff styles it as a state law cause of action. I think that's right, and I think that doesn't really answer the question we have, which is, your point is, if you look at the complaint here, even in substance, it says nothing about coverage, and I think that's fair. But the question is, do we look elsewhere for the third factor? Is there a law that we have or the Supreme Court has looked beyond the complaint, even assuming it's not just labels and not artful pleading, but just on its face that we've looked beyond that to something else to make the call for the third element? I'm not aware of a case where that has happened. But again, I think — Can I ask you about CAVR or CAVR? You're familiar with the case, right? Somewhat. Okay. It was cited by the parties. I'm not just surprising everybody on it, right? Right. Okay. So if you go — the way CAVR is written, it goes element by element, as our learned colleague is wont to do when she writes a well-crafted opinion. And when she gets to the causal connection part, she says, this is the element, she cites the law. And then she says, and this is at page 1145, the acts that CAVR challenges relate to actions of CAEC, that's the cooperative, in not making cash distributions of patronage capital. In its notice of removal, CAEC claims — I'm not going to read it all. It claims one, that's long, and then two, that's long. And then they claim that there's accumulation, and then there's a quote from it. All of that comes from the notice of removal. Does that not mean that we have to look at or we should look at the notice of removal in making the determination of whether the causal connection has been met?  Your Honor, our position is not that you're forbidden from looking at anything beyond the complaint. This is not like a motion to dismiss where you're stuck in the four corners and that's it. Our position is that — I have to say, that's how I read your position in your brief. But tell me what I'm misunderstanding about your position. Okay, apologies for that. No, no, no, that's my misunderstanding. Okay, our position is that ultimately, removal jurisdiction is a function of the theory that the plaintiff alleged. It's a question of here, where does the duty that the plaintiff is suing on, where does that duty originate? Does it originate in the Medicare statute or in the Medicare regulations? In certain coverage determinations, it would. And in that case, there might be removal jurisdiction. But if the duty that we're suing on purely originates in — Of course, but the question is, where do we look for that? You'd say that we only should look at the complaint to define the duty. Kaver, in at least that case, we looked at the notice of removal to define that very thing. So where do we look? Again, I would say that you have to look at the complaint because the claim that is pled is that the plaintiff is the master of the complaint, and it chooses which theory it wishes to proceed under. And if the plaintiff is exclusively proceeding under a theory of breach of the provider — That sounds a lot like the well-pled complaint rule, which you just told me is not really what your position is rested on. Well, not exactly in the sense that the well-pled complaint rule says that you just facially look at it. Right. If it's the state law cause of action, that's the end of the inquiry. In situations where federal officer removal or complete preemption or something similar might apply, you look beyond the label, but you still look at the substance of the claim. So this comes up a lot in healthcare, in the complete preemption cases, where you have situations where — The problem is, though, in the complete preemption cases, the direction is to look beyond whatever is there to whether it encapsulates the federal cause of action. The law is different. And so the question that I have is, your complaint says that it's a payment dispute. Their notice of removal says the duty rests not in there, but in the interpretation of Medicare regulations. The exact thing which you've agreed, if it exists, would be completely preempted. And I read to you from the notice of removal, that's exactly what it says. So if KAVER is telling me to look there, and I do look there, and that seems to be exactly what you say is subject to federal officer removal, then why is this not subject to federal officer removal? I guess what I'd say is that the only legal cause of action asserted is for breach of the provider agreement. So that's the case that we have. We're not litigating a coverage dispute. We haven't pled that claim. And so let's assume for the sake of argument that Solis is correct about the facts. The discovery comes in. It turns out that these claims really were denied. That's a merits issue. I mean, all that means is that Solis will prevail on the merits because we haven't asserted a claim challenging coverage. So if it truly is the case that these were denied claims, there cannot have been a breach of the rate provisions in the provider agreement because Solis didn't have an obligation to pay anything on claims that were not covered. So it's not the case that we get to ignore the facts and just litigate facts that we want to litigate because ultimately the merits will be determined by what the real facts are. But what I would submit is that the jurisdictional question, the question of whether the claim is removable, is purely a function of the legal theory that the plaintiff is proceeding under because the plaintiff is master of the complaint. So I think those are two different things. So what happens then if the case is where it is remanded and during your state case you start getting into an issue of it really does involve some coverage questions? I mean, again, it just means that the plaintiff will lose on the merits because the only legal cause of action asserted is for breach of the rate provisions in the provider agreement. It means something else, though, too. It does mean a federal official was denied the right to litigate their claim in federal court. In other words, if the facts are what Judge Lessinger has asked you, there is a denial of something that's significant under federal law, and that is the denial of the right to be here as opposed to across the street. Right? Well, I mean, they would still, for federal officer removal, there would still have to be, I mean, it would still have to be a claim that's federal in nature. Right, but if the facts are what Judge Lessinger just said, that would be a federal, you've already admitted this, you have to, that a coverage dispute based on the interpretation of Medicare regulations is a federal officer acting on behalf of a federal agency. And so if those are what the facts are, then why isn't it here? Whereas the other remedy is if we look and we go with the notice of removal and it says that and we keep it here and during discovery it becomes clear that this is just a payment dispute and not that, we can always remand back. Right? But I think your question presumes at the outset that there is a coverage dispute. No, because I'm saying if we look at the remand order, in other words, we err on the side of looking beyond what you've alleged and keep it in federal court, but in discovery it's determined the opposite of what Judge Lessinger just asked you. It seems pretty easy and clear that we can just remand it back and a federal official doesn't lose any right at that point. You could, but I think to get back to Judge Lessinger's question, if it turns out that some of these claims were denied and that this is coverage, those claims just fall out of the case. We're not continuing to pursue some kind of reimbursement on the denied claims. We are only seeking additional reimbursement on the claims that were covered and just underpaid under the rate provisions of the contract. So there's no possibility that this will turn into a coverage dispute in state court because as soon as the evidence shows that any of these claims were denied, we're done with them. We're not continuing to seek reimbursement on them. But aren't you fighting, in making this argument today, aren't you fighting against what the Supreme Court told us in Willingham about the federal officer removal statute, that courts should avoid a narrow, grudging interpretation of the federal officer removal statute instead it should be liberally construed, which we know the district court got wrong. The district court said federal courts are directed to construe removal statutes strictly, which is the general removal statute. Sure. There was a boilerplate sentence in the legal standard portion. That was wrong. That was incorrect. We concede that. But so under the liberal construction of the federal officer removal statute, why isn't this dispute that we're talking about here, the payment versus coverage, why doesn't that liberally construing this statute, why doesn't that get us to federal court? Because I think we just get back to where we started, which is the ultimate question here is what drives the determination about whether there's removal jurisdiction or not. Is it driven by the allegations and the legal causes of action that the plaintiff asserted? Or can the defendant show up and say, I think that the facts are actually different, and I think you should have asserted different causes of action, and so I'm going to remove on the basis of this alternative set of facts and causes of action that I came up with separately. But again, this is where the liberal construction, why not to Judge Luck's point, why not if we're going to liberally construe it, remove it to federal court, and if as discovery progresses it turns out, in fact, this is just a payment dispute, why not remand at that point? Well, I would just say that under any possible construction of the statute, if you accept the premise that jurisdiction is determined by the causes of action that the plaintiff asserts and that the plaintiff is still master of its complaint, there's no construction, liberal or strict, which would allow for removal here because the complaint is very clear that the plaintiff is only alleging causes of action for breach of the provider agreement. The problem is, though, doesn't our case law answer that? I mean, Mungin and Kaver both look at notices of removal for various elements of when determining federal officer removal. In other words, the cat's already out of that bag. And so once we look at the notice of removal, it seems clear here that one side says it's a coverage dispute, and once that's the case, there's a lot of agreement between the parties. That seems to be where we're at now. That doesn't mean that's, in fact, what the facts are. You may be right. But in terms of whether at this stage what we look at, it seems to be that we do look beyond what you're saying to the notice of removal. Well, I think those cases say you can maybe look at some of the facts that are asserted in the notice of removal. But, again, the legal theory here is purely a state law breach of contract case. That's all this is. We will never get to a point, either in state court or in a federal district court, where we're debating coverage issues because we're not challenging, as the plaintiff, we're not challenging coverage issues. I know, but if the dispute is you paid me zero and I paid you zero because it's not covered, and you say, well, you paid me less than I'm owed, then that is a coverage dispute. I mean, that is a payment dispute and a coverage dispute. But what I'm saying is that we don't have any of those claims. No, you have a payment dispute where you've been silent on the other thing and the notice of removal is not silent on that other thing. It's saying, yes, we paid zero, they're right, we didn't pay them what they think they owe, we didn't because it's not covered after under reading the Medicare regulations. Can I answer that question? Yes. Okay, so two quick responses to that. The first is that, again, any claim that turns out is a coverage claim is going to fall out of the case. We're not pursuing those. But I would add that a zero payment on a claim is not always indicative of a denial. There are a lot of situations where a line item or a claim could be zero paid for a reason that is not a coverage issue. A lot of times you get claims with there's a bill with multiple line items, certain ones are zeroed out, why did they not pay those? It might be because they weren't covered. It might be because those were covered services, but the payer decided that they were paid in full based on payments, other line items on the claim. So it can get factually a bit confusing. That being said, and I'll reiterate again, any coverage issues in the trial court are not things we're pursuing. It's purely a rate case. Thank you. Ms. Ford, you have five minutes. Your Honors, I believe that what is being overlooked is that there can be partial denials. We have 12 claims at issue that the discovery in the trial court has revealed. Seven of those are partial denials. Between three and ten days of hospital stays were denied. Seven out of ten, three denied. And those denials were based on medical necessity, which are coverage issues. There are a lot of Medicare guidelines and manuals. The reason why we cited an online volume of Medicare manuals in our briefing is because there are over 20 volumes of them. And they determine how claims are adjudicated, both for providers and for institutional providers like Mount Sinai. They have all the ways that Medicare bundles claims, detects unbundling, why you pay half of an assistant surgeon's rate instead of the full rate because you're paying the full rate to the first. All of those rules are coverage rules and payment rules under Medicare that SOLAS is required to apply. And so what's being ignored here is it doesn't need to be zero for the entire claim. It can be zero for those line items. And those line items that are zeroed out are denied because of some other claim. Why are you not, though, rewriting his complaint? I mean, what he's saying is, yes, it's not a four corners rule, but the claims are the claims. And here the claims are, we have a contract between the two of us that has nothing to do with Medicare. And solely based on the terms of that contract, you paid me less than I'm owed. Now that may be wrong. There may be defenses to that that may be completely off. But if that is it and we don't look beyond that, how possibly is that acting under, how is that causal connection met in this case? Well, the medical claims haven't changed. And so there was confusion in the Mount Sinai briefing using the word claim to refer to a breach of contract claim versus a medical claim. But the claims are not changed. And really it's being able to articulate defenses in federal court because they're coverage claims. And that's what's at issue here. What you're basically arguing is that this is not a case where the contract says we'll pay $50 but you only paid $30. It's a question of what was done was necessary as interpreted by regulations that Medicare, the federal government, puts out. Yes. Any partial denials were because of medical necessity or other Medicare rules that make it a coverage issue and not a rate of payment. It's not a mathematical question. It's a medical issue. Sorry, I didn't mean to interrupt. That's okay. But the thing is that the contract, if you say it's only based on the contract, the contract incorporates the Medicare statutes, the rules, regulations, and specifically defines covered services as those allowed in the member's Medicare plans. So the contract, the hospital contract itself, refers back to the Medicare plans, which, of course, rely on all of the Medicare coverage rules and regulations. And so it's a little disingenuous to say we're only going to apply the hospital contract when it itself incorporates. Can I ask you a practical question? Yes. Why do you want to be in federal court? I'm always generally confused by that. Well— No, I want the honest answer. We— You think you're not going to get a quick hearing? You think you're just going to get a better result in federal court? What is it? We believe that the federal judges have a better grasp on the Medicare rules, regulations, and contractual provisions than state courts, and we shouldn't have to go in front of a jury to explain why three days weren't paid out of a 10-day hospital visit. Well, you may have to go to in front of a jury in federal court. But that was often a summary judgment issue, too. But even that's fixed now. In the old days, I would understand that, but even that's been fixed. Not really. From a practical point of view, not really. But Your Honor asked about cases. I would point you to the DeRoy case, which was an extreme case of artful pleading. This case, if you look back at the complaint, it is the epitome of an ERISA complaint that developed because of Connecticut State Dental and Barrero trying to avoid federal jurisdiction. The right versus rate dichotomy was pulled out of Connecticut State Dental, and they forget that rate—use the word may—that when it's a rate issue, it may imply only a provider contract. I think I've gone over my times, Your Honor. Thank you. Thank you both, and we have your case under advisement. Thank you. And I apologize right now. I called both of you by your wrong name. I had apparently jumped to the fourth case in my head. So, Ms. Mansfield and Mr. Siegelob, apologies for the name confusion. It's all a blur, Your Honor. Okay. And our fourth—